```
IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
            STATESVILLE DIVISION
              5:08CV113-MU-02
```

SAMUEL ALBRIGHT BROWN,    )
    Plaintiff,         )
                    )
     v.               )
                    )
OFFICER WINKLER; Correc- )
  tions Officer at the   )
  Alexander Correction   )           **O R D E R**
  Institution;           )
OFFICER SIMS, Correc-    )
  tions Officer at the   )
  ACI; and               )
OFFICER TEAGUE, Correc-  )
  tions Officer at the   )
  ACI,                   )
    Defendants.          )
_____)

**THIS MATTER** comes before the Court on Plaintiff's Complaint brought under 42 U.S.C. § 1983 (document # 1), filed October 10, 2008; on Defendants' Motion for Summary Judgment (document # 22), filed February 16, 2010; and on Plaintiff's Objection to Defendants' Motion for Summary Judgment (document # 24), filed February 24, 2010. For the reasons stated herein, Defendants' Motion for Summary Judgment will be <u>granted</u>; and Plaintiff's Complaint will be <u>dismissed</u>.

               **I.   FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff's Complaint (document # 1) first alleges that on an unspecified date, he was "directed by staff to go inside Housing Blocks to pick up cleaning supplies 'unescorted'"; that "staff"

was aware that "a[n] inmate was mad at [him] because [the inmate's] friend had got[ten] a write-up over a cleaning bottle," but "staff still sent [him] in the block to pick up bottles"; and that on such occasion,[1] he was assaulted and seriously injured by that inmate. Plaintiff also alleges that Defendant Sims "was in the block when [he] went in it"; and that Defendant Teague "observed [the assault] from the slid[ing] door [but] neither officer intervened . . . ." (Id.).

Last, Plaintiff alleges that the "staff officers in question w[ere] negligent [and] placed [him] in a dangerous [and] vulnerable position knowing there was prior problems"; and that such conduct violated his Eighth Amendment rights. (Id.). By way of relief, Plaintiff requests unspecified damages as determined by this Court. (Id).

Following an initial review, on October 21, 2008, the Court entered an Order (document # 4) dismissing the Complaint as to Defendant Winkler for its failure to set forth any allegations against him. The Order further dismissed the allegations of negligence against Defendants Sims and Teague because they are not cognizable under either the Eighth or Fourteenth Amendments, or under 42 U.S.C. § 1983. (Id.). In addition, the Order noted, to the extent Plaintiff was alleging that Defendants Sims and

---

[1] Based upon documents which the parties subsequently filed, it appears that the assault occurred on May 9, 2008.

2

Teague were deliberately indifferent to his need for safety, that such claim still failed because of Plaintiff's failure sufficiently to allege facts establishing that there was a specific known risk of harm from which Defendants should have protected him. (Id.). Therefore, the Order dismissed the Complaint in its entirety. (Id.).

Plaintiff appealed the dismissal to the Fourth Circuit Court of Appeals, and that Court vacated the decision and remanded the case for further proceedings. Brown v. North Carolina Dept. of Corrections, 2010 WL 76363 * 1 (4th Cir. Jan. 11, 2010). In particular, the Appellate Court first found that although Plaintiff's Complaint merely alleged that a "staff member" was aware that the assaulting inmate was mad at him, Plaintiff's grievance identified Defendant Winkler as the "staff member" who was aware of the circumstance and who "sent [him] to pick up cleaning supplies." Id. Therefore, the appellate Court found the allegation sufficient to state a claim of deliberate indifference against Defendant Winkler. Id. at *2. The Court also found that Plaintiff had stated a cause of action on his allegation that Defendant Teague witnessed but failed to intervene in the assault. Id.

Last, the Court of Appeals found that Plaintiff's allegations -- that "staff members" were aware that the assaulting inmate was mad at him, and that Defendant Sims "was in the Block"

when the assault occurred -- were sufficient to give rise to inferences that Sims was deliberately indifferent to Plaintiff, both by failing to protect him from the "serious harm posed by his fellow inmate" and by failing to intervene. Id. at 2-3.

In accordance with the appellate Court's remand, the undersigned entered an Order (document # 11) directing Defendants to respond to Plaintiff's allegations. To that end, on February 16, 2010, Defendants filed an Answer (document # 20) denying Plaintiff's allegations. Also on that date, Defendants filed the instant Motion for Summary Judgment along with a supporting Brief (document ## 21 and 22, respectively). By their Motion, Defendants assert that the pleadings, together with their Brief, their affidavits and a video recording of the assault, show that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law.

On February 19, 2010, the Court entered an Order (document # 23) pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). Such Order reviewed the relevant portions of Federal Rule of Civil Procedure 56. The Order further advised Plaintiff that it appeared Defendants were entitled to a summary judgment, and that he had an obligation to file his own affidavit(s) or unsworn declaration(s) in opposition to Defendants filing.

Nevertheless, on February 24, 2010, Plaintiff filed an Objection (document # 24) which he failed to support with either an

4

affidavit or otherwise.  Moreover, the Objection does not even attempt to rebut Defendants' arguments and representations. Instead, that document merely argues that Defendants' negligence caused his injuries; therefore, summary judgment is inappropriate because a jury should be allowed to "apply the reasonable person standard . . ." to the facts of his case.

## II. ANALYSIS

### A. Standard of Review for Summary Judgment

A motion for summary judgment should be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  Thus, to withstand a motion for summary judgment, the non-moving party must forecast the existence of competent evidence sufficient to reveal the existence of a genuine issue of material fact. Fed.R.Civ.P. 56(e)(2); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 246-47 (1986).

In determining whether a "genuine issue of material fact" exists, thereby precluding the entry of summary judgment in favor of the moving party, this Court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences from such evidence in his favor. Erwin v. United States, 591 F.3d 313, 327 (4th Cir. 2010).  However, a non-movant

cannot create a genuine issue of material fact through speculation or a compilation of inferences. Emmett v. Johnson, 532 F.3d 291, 297 (4th Cir. 2008). Nor can that party overcome a motion for summary judgment by relying upon allegations or denials in his own pleading. Fed.R.Civ.P. 56(e)(2). Moreover, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 246-47. Rather, "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment." Thompson v. Carlisle, 2010 WL 382044 *1 (4th Cir. Feb. 3, 2010) (unpublished). In sum, therefore, "[t]he relevant inquiry in a summary judgment analysis is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. (internal quotation and citation omitted).

**B. Deliberate Indifference**

"A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 828 (1994) (internal quotation and citation omitted). Indeed, "prison officials have a duty [] to protect prisoners from violence at the hands of other prisoners." Id. at 833 (quotation and citation omitted). Nevertheless, not "every injury suffered by one prisoner at the

6

hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." Id. at 834.

On the contrary, in order to be liable for inmate-on-inmate violence, the victim must establish that he was "incarcerated under conditions posing a substantial risk of serious harm; and that the officers in question were deliberately indifferent to the victim's health or safety. Id. That is, Plaintiff must establish that Defendants knew of and disregarded an excessive risk to his health or safety. Id. at 837; Case v. Ahitow, 301 F.3d 605, 607 (4th Cir. 2002)("the test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so."); Pressly v. Hutto, 816 F.2d 977, 979 (4th Cir. 1987) (the Eighth Amendment protects an inmate from physical harm at the hands of fellow inmates resulting from "the deliberate or callous indifference of prison officials to specific known risks of such harm."). Therefore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under [the Supreme Court's] cases be condemned as the infliction of punishment" in violation of the Eighth Amendment. Id.; Tatum v. Shearin, 2010 WL 673195 *4 (D. Md. Feb. 18, 2010) (noting that to prevail, plaintiff must establish not that defendant should have recognized substantial risk

7

of harm, but that he actually did perceive the risk; and that he "subjectively recognized that his actions were inappropriate in light of that risk.").

   1. **Plaintiff's signed statement**

At the outset of its analysis, the Court notes that Defendants submitted a copy of a signed statement (document # 22-6) that Plaintiff executed, with the assistance of an uninvolved correctional officer, on the day after his assault. Such statement reports:

> At approximately 0915 on 5-9-08, [Plaintiff] was collecting cleaning supply bottles in C-Wing of Blue Unit. He missed a bottle in the far back on the bottom level. When [Plaintiff] turned to ask a [correctional officer] to open the supply closet, another [inmate] told him the bottle was still in the back. The doors in the back of the wing appeared shut, so [Plaintiff] went back and bent to pick up the bottle. As he stood back up, another [inmate] hit him. [Plaintiff] did not see the [inmate's] face, but noticed he was wearing a brown tobogan- [sic] type hat. [Plaintiff] told the other [inmate] he would not fight him several times as the [inmate] hit him repeatedly. [Plaintiff] then tried to push the other [inmate] away with his left hand. [Plaintiff] kept his back turned to the other [inmate] the whole time.
>
> [Defendant] Teague ran into the wing and told the other [inmate] to stop fighting and get to his knees. The [inmate] refused. [Defendant] Teague then used pepper spray on the other [inmate]. After this, Sgt. Riggs arrived and both [inmates] were placed in restraints.

As is apparent from the foregoing, Plaintiff's statement is

at odds with the material allegations in his Complaint. Furthermore, Plaintiff's statement actually is consistent with Defendants' evidentiary forecast as reflected in their Affidavits and video recording of the assault.

**2. <u>Defendant Winkler</u>**

Liberally construed, Plaintiff's Complaint alleges that Defendant Winkler was aware that an inmate was "mad" at him; that notwithstanding that information, Winkler sent Plaintiff into a Housing Block to retrieve supplies without an escort; and that Plaintiff was seriously assaulted by such other inmate while complying with Winkler's directive.

In Response, Defendant Winkler filed an Affidavit (document # 22-4) in which she denies knowing of any problem between Plaintiff and his attacker. Equally significant, Defendant Winkler denies that she sent Plaintiff into the Housing Block. (<u>Id</u>.). In fact, Defendant Winkler asserts that she was not working on the date of the assault. (<u>Id</u>.). In support of this assertion, Defendant Winkler submitted a copy of her computerized time sheet. (<u>Id</u>.). That time sheet has no attendance entry recorded for Defendant Winkler on the date of Plaintiff's assault. (<u>Id</u>.).

Thus, inasmuch as Plaintiff's Objection (document # 24) does not refute this forecast, there is nothing before the Court –– other than Plaintiff's initial allegations –– to support a

9

conclusion that Defendant Winkler perceived a serious risk of harm to Plaintiff but acted without regard for that risk.

   3. **Defendant Teague**

As for the allegation that Defendant Teague was present but failed to intervene in the assault, Teague's evidentiary forecast sharply contradicts this claim.  First, Defendant Teague's Affidavit (document # 22-2) asserts that just prior to the assault, he was in another building and not, as Plaintiff alleges, standing idly by as the assault took place.  The Affidavit further states that Defendant Teague did not direct Plaintiff to go into the Housing Block, unescorted or otherwise.  Rather, the Affidavit states that Plaintiff was retrieving the water bottles in accordance with his job assignment; and that had Plaintiff wanted to do so, he could have waited for Teague to accompany him into the Block.  The Affidavit further asserts that Defendant Teague had no knowledge of a problem between Plaintiff and his attacker; that just as the video recording shows, as soon as Teague discovered the assault, he ran to Plaintiff's rescue as he simultaneously ordered the attacker to stop his assault; that although the inmate immediately stepped away from Plaintiff, Teague had to forcibly take him to the ground; that Defendant Teague made a radio call for assistance and sprayed Plaintiff's attacker with pepper spray in order to fully subdue him; and that Defendant Teague never told Plaintiff or anyone else that he had

10

mistaken the attack for horseplay.

In addition, the Court has viewed the video recording and found that it substantiates Defendant Teague's version of the assault, including his representations that he was not present when the assault began, that when he discovered the assault -- which, according to the timer on the video recording, was seven seconds after it began -- Teague ran to Plaintiff's aid, and Plaintiff's attacker stopped striking him at Teague's command, that is, within 13 seconds after the attack began.

Notwithstanding such evidentiary forecast, as was previously noted, Plaintiff did not rejoin Defendant Teague's representations. On the contrary, Plaintiff's Objection to the Motion for Summary Judgment merely contends that Defendant Teague (as well as the other Defendants) was negligent, and so a jury should be allowed to apply the "reasonable person standard" to their conduct. (Id.). Suffice it to say, such contention falls far short of establishing a genuine issue of material fact as to whether Defendant Teague deliberately was indifferent to Plaintiff's need for safety and protection.

### 4. **Defendant Sims**

Plaintiff also alleges that Defendant Sims was in the Housing Block when the assault occurred, but failed to intervene. Similar to Defendant Teague, however, Defendant Sims filed an Affidavit (document # 22-3) that undermines Plaintiff's

allegations. Specifically, Defendant Sims represents that he did not enter the Housing Block where the attack occurred until he responded to Defendant Teague's radio call; that when he received the call, as the video recording reflects, the assault already had ended; and that he was not aware of any problems between Plaintiff and his attacker.

Critically, the Court's review of the video recording confirms that Defendant Sims arrived in the Housing Block <u>after</u> Defendant Teague called for assistance; and that although Sims arrived within seconds, the assault was over when he arrived. Once again, Plaintiff's Objection fails to rebut this evidentiary forecast.

Ultimately, it cannot be argued that the assault on Plaintiff was unfortunate. Plaintiff's attacker properly was charged with that incident. Nevertheless, upon a careful review of the record before the Court it is apparent that Plaintiff has failed to establish that Defendants are liable for his assault. Indeed, the evidence before the Court is so one-sided that there is no genuine issue for a jury to resolve and Defendants must prevail as a matter of law. <u>Thompson</u>, <u>supra</u>, 2010 WL 382044 at *1.

**NOW, THEREFORE, IT IS ORDERED THAT:**

1. Defendants' Motion for Summary Judgment (document # 22) is **GRANTED;** and

2. Plaintiff's Complaint is **DISMISSED** in its entirety.

**SO ORDERED.**

Signed: March 5, 2010

Graham C. Mullen
United States District Judge